UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

                  Plaintiff,

- against -

ERIC ARONSON,
VINCENT BUONAURO and
FREDRIC AARON,

                  Defendants.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**

CR-12-0245 (ADS)

**A P P E A R A N C E S:**

    **LORETTA E. LYNCH**
    United States Attorney
    Eastern District of New York
    610 Federal Plaza
    Central Islip, NY 11722
      By:    William Patrick Campos,
             Assistant U.S. Attorney

    **GROSSMAN & RINALDO**
    Attorneys for Defendant Eric Aronson
    108-18 Queens Boulevard, Suite 5
    Forest Hills, NY 11375
      By:    Paul Peter Rinaldo, Esq.
             Of Counsel

    **SANDERS ORTOLI**
    Attorneys for Defendant Vincent Buonauro
    501 Madison Avenue, 14th Floor
    New York, NY 10022
      By:    Marc S. Gottlieb, Esq.
             Of Counsel

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.**
Attorneys for Defendant Fredric Aaron
565 Fifth Avenue
New York, NY 10017
By: Elkan Abramowitz, Esq.
Robert M. Radick, Esq.
Dana Delger, Esq.
Of Counsel

**SPATT, District Judge.**

This case involves charges of conspiracy to commit securities fraud, securities fraud, mail fraud and wire fraud. The indictment alleges that, between 2006 and 2010, by way of a business collectively known as the "PermaPave Entities", the defendants solicited money from investors by making false representations. Before the Court is the motion by the defendant Fredric Aaron for a severance.

## I. The Government's Contentions

The defendants were charged by indictment in perpetrating a scheme to defraud investors by operating their company as a Ponzi scheme. Starting in 2006, the defendants Aronson and Buonauro allegedly solicited money from investors by making materially false representations and omissions. According to the Government, the defendants Aronson and Buonauro falsely claimed that the investors' money would be used to buy and ship PermaPave products from Australia to the United States and that PermaPave had signed contracts with various municipalities to install PermaPave products. The Government contends that each of these representations were false.

In late 2008, the defendant Aaron allegedly joined "Aronson's team" first as an attorney and later as an officer and part owner of one of the PermaPave Entities. In

addition, the Government contends that Aaron "helped write a letter that falsely told investors that an agreement was finalized with the City of Augusta, Georgia, to install PermaPave products."  Also, as both an attorney and an officer of the company, when PermaPave Entities were frozen by Court Order, Aaron allowed his attorney IOLA account to be used as the operating account for PermaPave, making large transfers to the defendant Aronson's personal account and withdrawing cash.  In addition, according to the Government, Aaron was involved in persuading many investors to exchange their investments, further harming them.

## II.  The Contentions By The Defendant Fredric Aaron

The defendant Fredric Aaron is an attorney licensed to practice law in the State of New York.  He has his own law practice "and an unblemished record that he earned through over 20 years of hard work."  (Dft's Memorandum of Law at 1).  According to Aaron, he was not involved in any fraud; he acted in good faith "as Aronson implacably deceived him, manipulated him . . .."  (Dft's Memorandum at 1).  Aaron also contends that Aronson plans on defending himself by making a scapegoat of Aaron by relying on a meritless "advice of counsel" defense.  Further, Aaron contends that in a joint trial with Aronson, "a jury could not reasonably be expected simultaneously to give fair consideration to Mr. Aaron's defense that he was used, misled and deceived by Aronson . . . and shift the blame to Mr. Aaron through an advice of counsel defense." (Dft's Memorandum at 3).

So that Aaron contends that it would be difficult, if not impossible for a single jury to evaluate these different defenses.  In addition, Aaron contends that he was only a tarigentual figure in Aronson's multi-faced frauds.  Finally, Aaron contends that he

3

would be unfairly tainted if he was tried with Aronson, with most of the evidence inadmissible against Aaron, if he were tried alone. Therefore, the defendant Fredric Aaron requests the Court grant his motion for a severance.

### III. In Reply By The Government

In a letter dated February 22, 2013, the Government opposes this motion for a severance. According to the prosecutor Aaron was no "mere attorney only giving advice based solely on information obtained from defendant Aronson. Rather, Aaron was an officer and part owner of the parent company . . . and became an integral part of the fraud." (Campos letter at 2). In addition, the Government contends that at the trial there will be evidence introduced that Aaron and his co-conspirators devised an exit strategy based on lies to escape the payment of investors.

### IV. Discussion

Initially, the Court finds that these three defendants were properly joined together in this indictment. Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Clearly, joinder was proper under Rule 8. Further, when defendants are properly joined under Rule 8, a severance, pursuant to Fed. R. Crim. P. 14, should only be granted if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocense. See a major United States Supreme Court ruling on the issue of severance, namely, Zafiro v. United States, 506 U.S. 534, 539, 113 S. Ct. 933, 938,

4

122 L. Ed. 2d 317 (1988). A defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy and the other substantial benefits that would be realized by avoiding multiple lengthy trials. See United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984).

A defendant may move for severance under Rule 14, which provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendant or provide whatever justice requires.

Fed. R. Crim. P. 14.

Under this rule, the decision to sever a joint trial "is committed to the sound discretion of the trial judge." United States v. Blount, 291 F.3d 201, 209 (2d Cir. 2002). There is a strong preference in the federal system for joint trials of defendants who are indicted together, Zafiro v. United States, 506 U.S. at 537. However, even if prejudice is shown, Rule 14 does not require severance. See United States v. Haynes, 16 F.3d 29, 32 (2d Cir. 1994). Rather, "limiting instructions often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539. As correctly stated by the Government, "It is well-settled that joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537. As stated above, the major case in the law of severance was established by the United States Supreme Court in Zafiro and also one year prior in Richardson v. Marsh, 481 U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). A pertinent position of the Richardson

decision precisely discusses the issues presented in this motion, as follows:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - - advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson, 481 U.S. 200 at 210.

The Court finds that the reasons raised by the defendant Aaron for a severance are insufficient to require such a determination. The facts in this case decidedly lean toward its resolution by a joint trial.

First, the favored presumption of a joint trial is strengthened in this case because the crimes charged involve a common scheme or plan. See United States v. Turoff, 853 F.2d 1037, 1042-43 (2d Cir. 1988).

Second, the risks of prejudice attendant in a joint trial are in many instances outweighed by the conservation of time, money and scarce judicial resources. See United States v. Jimentz, 824 F. Supp. 2d 351, 366 (S.D.N.Y. 1993).

Third, generally, severance is not warranted unless the denial of that relief would severely prejudice a defendant so that he could not obtain a constitutionally fair trial. See United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993), cert. den. 114 S. Ct. 1465 (1994); United States v. LaSauta, 978 F.2d 1300, 1306 (2d Cir. 1992). In the

6

Court's view, that is not the situation in this case.

Fourth, multi-defendant trials involving a common scheme or plan almost inevitably produce disparity in the evidence, but that generally does not warrant a severance. In United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1992), the rules in this regard were clearly set forth.

 (a) "The defendant must establish prejudice so great as to deny him a fair trial."

 (b) "We recognize that appellants may have suffered some prejudice when they were forced to sit before the jury for over a month without any evidence being introduced concerning their activities. Nonetheless, a disproportionate introduction of evidence relating to joined defendants does not require severance in every case . . . Relief by severances may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater. The unrelated evidence presented in the instant case reveals only another bank fraud scheme; disparity in the quantity of evidence and proof of culpability are irrevitable in any multi-defendant trial, and by themselves do not warrant a severance. See United States v. Chang-Lo, 851 F.2d 547, 557 (2d Cir. 1988)."

 (c) There were careful instructions by the trial judge, no fewer than six times, charging the jury to consider separately the evidence against each defendant.

 (d) "An adversarial stance by a co-defendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multi-defendant conspiracy trials would ensue since conspirators raise many different and conflicting defenses."

Fifth, also, of importance in this case, the defendant Aaron is greatly concerned about his alleged shorter, non-existent or peripheral role in the defendant Aronson's extended wide-ranging fraud, and the marked difference in duration and culpability. The Court notes that, with reasonable certainty, these problems would occur even if the Court were to grant a severance. Even if Aaron were tried alone, with reasonable

7

certainty, there would inevitably be offers of evidence and proof of the same alleged conspiracy involving Aronson. Portions of the same proof that will be introduced at this trial, may be offered and may be introduced at any severed trial.

The proper method of dealing with these disparities is by the Court in its limiting instructions. Even if there was a severance, with reasonable certainty, the Court would have to similarly instruct the jury as to the same factual situations. However, with a severance, there may be additional problems requiring limiting instructions, depending upon the results of this trial. As stated in Zafiro, even if there is some potential prejudice, "less drastic measures, such as limiting instructions often will suffice to cure any risk of prejudice." 506 U.S. at 34.

Therefore, in the Court's view, the potential prejudice raised by the defendant would be more easily contained in the joint trial.

## V. Conclusion

Having reviewed the submissions of the parties, it is hereby;

ORDERED, that this motion by the defendant Fredric Aaron for a severance is denied.

**SO ORDERED.**

Dated:   Central Islip, New York
         March 7, 2013

                                    /s/ARTHUR D. SPATT
                                    ARTHUR D. SPATT
                                    United States District Judge